Sharon ANDRADE, et al., Appellants,
Terrence S. Donahue, et al.

v.

Alfred S. REGNERY, et al.

No. 86–5613.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 30, 1987.

Decided Aug. 4, 1987.

Mona Lyons, with whom William C. McLain and John W. Karr, were on brief, for appellants.

Randy L. Levine, Associate Deputy Atty. Gen., Dept. of Justice, with whom Richard K. Willard, Asst. Atty. Gen., Dept. of Justice, Joseph E. diGenova, U.S. Atty., and Douglas N. Letter, Atty., Dept. of Justice, were on brief, for appellees.

Before MIKVA and WILLIAMS, Circuit Judges and WEIGEL,* Senior District Judge.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

Seven present or former employees of the Office of Juvenile Justice and Delinquency Prevention (OJJDP) challenge their demotion or termination under a reduction in force program (RIF). Appellants and others originally resisted implementation of the RIF on a number of grounds, many of which this court previously dismissed for reasons of ripeness and failure to exhaust administrative remedies. *See Andrade v. Lauer,* 729 F.2d 1475 (D.C.Cir.1984) (*Andrade I*). In *Andrade I,* however, we also remanded to the district court for adjudication of appellants' constitutional claim that the RIF was implemented and carried out by government officials whose tenure violated the requirements of the Appointments Clause, U.S. Const. art. II, § 2, cl. 2. On remand, the district court granted the government's motion for summary judgment on the Appointments Clause claim, prompting appellants' second visit to this court. We now affirm.

BACKGROUND

The relevant facts of this dispute have already been set out in our opinion in *Andrade I, see* 729 F.2d at 1478–80, and can be briefly recapitulated here. Appellants were demoted or fired as part of a RIF that went into effect on March 26, 1982. At that time, the OJJDP was one of a group of five agencies housed within the Department of Justice (DOJ) under the general authority of the Attorney General. The OJJDP's function was to administer federal programs concerned with juvenile delinquency. Among the five agencies housed with OJJDP were two others that figure in this case: the Office of Justice Assistance, Research, and Statistics (OJARS) and the

---

* Of the United States District Court for the Northern District of California, sitting by designation pursuant to 28 U.S.C. § 294(d).

Law Enforcement Assistance Administration (LEAA).

At the time the RIF was implemented, Congress was unhappy with the performance of the LEAA and for three years it had refused to appropriate any new funding for the agency. The LEAA therefore was receiving no money to pay its employees and was effectively being phased out of existence. The LEAA's prospects for survival were brightened considerably on June 16, 1981, when Assistant Attorney General Kevin Rooney issued an order grouping the five DOJ agencies into one "competitive area." Under federal personnel regulations, when a RIF is instituted, employees in the same competitive area compete to retain their jobs. Normally, a competitive area is confined to employees of a single agency. *See Andrade I,* 729 F.2d at 1479. Thus, ordinarily the RIF occasioned by the cutoff in funds to the LEAA would have affected only LEAA employees. After the Rooney order, however, the upcoming RIF would affect employees from all five agencies, including the OJJDP and, in particular, appellants.

Officials of the five agencies began to make plans for a RIF late in 1981. The plans were administered principally by Robert Diegelman, Acting Director of OJARS, and, to a lesser extent, by Charles Lauer, Acting Deputy Administrator of OJJDP. Diegelman had been appointed to his post on August 4, 1980, while Lauer had been designated Acting Deputy Administrator of OJJDP on February 13, 1981. Appellants maintain that both Diegelman and Lauer exercised authority in violation of the Appointments Clause, because neither official was ever nominated by the President or confirmed by the Senate.

On December 3, 1981, Diegelman sent a notification to appellants informing them that a RIF was to be instituted sometime early in 1982. On February 26, 1982, the seven appellants were formally notified that they were among the 14 OJJDP employees who would be laid off or demoted in a RIF to be implemented on March 26, 1982. Shortly before the RIF was implemented, on March 23, 1982, an Assistant

Attorney General formally appointed Lauer to be the Deputy Administrator of OJJDP. On March 25, Lauer signed an affidavit purporting to ratify all actions affecting OJJDP taken in connection with the upcoming RIF, which went into effect as scheduled the following day.

On March 25, 1982, appellants, along with 21 other OJJDP employees who feared they would be fired in future RIFs, initiated this longstanding litigation by bringing an action for a preliminary injunction in the District Court for the District of Columbia. Plaintiffs claimed that the imminent RIF would violate federal regulations, a federal statute, and the federal constitution (i.e., the Appointments Clause). The district court dismissed the claims of the other 21 employees on ripeness grounds. The court also dismissed appellants' claims, finding that appellants had not exhausted their administrative remedies for their nonconstitutional claims and that they lacked standing to bring their constitutional claim.

In *Andrade I,* this court resolved the appeal from that district court decision. We affirmed the district court decision as to all claims save appellants' Appointments Clause challenge, which we found appellants had standing to bring. *See Andrade I,* 729 F.2d at 1494–96. We further held that the *de facto* officer doctrine does not bar challenges to government action based on the Appointments Clause where (1) the lawsuit is brought at or around the time of the challenged action, and (2) the plaintiffs can show that the agency or department had actual notice of the claimed defect in the acting official's title to office. *Id.* at 1499. Finding that the first requirement had been met, we remanded to the district court for a determination of whether the government had actual notice of the alleged deficiencies in Diegelman's and Lauer's exercise of power. If the district court concluded that the government did have such notice, it was to proceed to the merits of the constitutional claim.

On remand, the district court found that the government did in fact have actual notice of the alleged defects in the authori-

ty of Lauer and Diegelman. The court concluded in a Memorandum Opinion that Lauer's formal installation as Deputy Administrator of OJJDP, Lauer's completion of an affidavit ratifying all actions taken in connection with the RIF, and the pendency of the litigation on March 26 all demonstrated official knowledge of a possible defect in authority. *Andrade v. Regnery*, Civ. Action No. 82–848, slip op. at 8–9 (D.D.C. May 23, 1986). The district court, however, then proceeded to grant summary judgment for the government on the merits of the Appointments Clause claim. The court's opinion set out three alternative reasons why the implementation of the RIF did not offend the Appointments Clause. First, on March 26, 1982, the day the RIF was implemented, Lauer had already been appointed to his post as Deputy Administrator of OJJDP: "He was lawfully in office on that date, and no further formality should be required to make him responsible for the RIF and to make it the authorized action of the agency under his aegis." *Id.* at 12. Second, the court found that the functional cause of appellants' injuries was the order melding five agencies into a single competitive area, and that order had been issued by a duly appointed Assistant Attorney General. *See id.* at 13–14. Finally, the court found that any defect in the implementation of the RIF as to appellants had been cured by Lauer's act of ratification on March 25. *See id.* at 12.

This appeal followed.

### DISCUSSION

■ We have no difficulty upholding the district court's conclusion that the government had actual notice of the alleged defect in the authority of Diegelman and Lauer. The filing of the underlying suit on March 25 in and of itself notified the government of appellants' Appointments Clause challenge. Thus, under our holding in *Andrade I*, this action is not barred by the *de facto* officer doctrine. *See Andrade I*, 729 F.2d at 1499–1500.

There remains, however, appellants' challenge to the district court's holding on the merits of their Appointments Clause claim.

The Appointments Clause of the Constitution provides:

> [The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint ... all ... Officers of the United States, whose Appointments are not provided for, and which shall be established by Law; but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const. art. II, § 2, cl. 2. The clause thus gives Congress discretion to set the appointment procedures for agency officials. The organic statutes for OJARS and OJJDP in effect at the time of the RIF provided for the appointment of both the Director of OJARS and the Administrator of OJJDP by the President with the advice and consent of the Senate. *See* 42 U.S.C. § 3781(a) (Supp.V.1981) and 42 U.S.C. § 5611(c) (1982). The organic statute for OJJDP also provided for the Attorney General's appointment of a Deputy Administrator, who is empowered to act as Administrator in the event of a vacancy in the Administrator's position. *See* 42 U.S.C. § 5611(e) (1982). Under applicable government regulations, the Attorney General's power to appoint the Deputy Administrator of OJJDP could be exercised by the Deputy Attorney General, as occurred in this case. *See* 28 C.F.R. § 0.15(a) (1985). It therefore is clear that Lauer had been duly appointed as Deputy Administrator of OJJDP on March 26, 1982, when the controversial RIF went into effect.

As noted, the district court gave three reasons for rejecting appellants' claim that the RIF was constitutionally infirm. Any of these three rationales potentially could provide an adequate basis for affirming the district court's grant of summary judgment. In this case, we find we need go no further than the district court's first proffered rationale. We agree with the district court that appellants' claim must fail because Lauer had been properly appointed Deputy Administrator of OJJDP on the date the RIF was implemented. Because

OJJDP had no Administrator on March 26, 1982, Lauer as Deputy Administrator bore statutory responsibility for demoting or firing OJJDP employees. *See* 42 U.S.C. § 5612(a) (Supp.V 1981) ("The Administrator [of OJJDP] is authorized to select, employ, and fix the compensation of such officers and employees, including attorneys, as are necessary to perform the functions vested in him and to prescribe their functions.") Thus, the RIF, at least insofar as it affected OJJDP employees, was carried out by the duly appointed official in charge of the agency. Appellants therefore suffered no injury at the hands of an official who exercised power in violation of the Appointments Clause.

Appellants argue it makes no difference that Lauer was appointed to his post as Deputy Administrator three days before the RIF was implemented. They contend that the RIF was conceived and planned before March 23, during a period when, in their view, both Lauer and Diegelman held office in violation of the Constitution. Appellants point out that at the time of Lauer's appointment, he had been Acting Deputy Administrator of OJJDP for 13 months, while Diegelman had been Acting Director of OJARS for nearly 20 months. Appellants argue that the administration's prerogative to appoint acting officials to vacant posts must be tempered by a reasonableness limit on the time such officials can serve before having to undergo the normal statutory selection procedure for permanent officials. The district court found that it did not have to consider this question, however, and we agree. Even if the RIF was planned out in detail before Lauer moved from Acting to Permanent Deputy Director, the legally cognizable action that harmed appellants did not occur until March 26, when the RIF was actually implemented. We recognized in *Andrade I* that the particularized injury that permitted appellants to have standing to raise their claim was the loss of their jobs, not the mere fact that the government initiated plans that could have resulted in their demotion or termination. *See* 729 F.2d at 1494–95. It is the actual implementation of the RIF which we have power to redress, and that action, it is clear, came at the hands of a duly appointed official.

Appellants also argue that Lauer's appointment is irrelevant because it was Diegelman who had complete responsibility for crafting and executing the RIF. It does in fact appear, as the district court found, that Diegelman was much more involved than Lauer in the planning and execution of the RIF. However, it is an everyday occurrence in the operation of government for staff members to conceive and even carry out policies for which duly appointed or elected officials take official responsibility. Our government in fact depends on such delegation of responsibility, and it does not offend the Appointments Clause so long as the duly appointed official has final authority over the implementation of the governmental action. Lauer thus was the legal architect of the RIF with regard to the seven appellants, irrespective of whether he actually erected the plan. Because Lauer was the duly appointed OJJDP official responsible for employment decisions as of the day the RIF was implemented, the RIF did not abridge the requirements of the Appointments Clause.

CONCLUSION

Appellants have argued in this case that, at some point, the government's employment of "acting" officials to avoid making permanent appointments becomes so unreasonable as to offend the Appointments Clause. This may indeed be so. However, this case does not pose the question of when that point arrives. By the time the appellants suffered a legally cognizable injury, the official who carried out the injurious government action was duly installed in his post. That fact vitiates appellants' claim. The judgment of the district court is affirmed.

*It is so ordered.*