**FEDERAL ELECTION COMMISSION, Appellant,**

v.

**LEGI–TECH, INC., Appellee.**

**Nos. 94–5379, 95–5085.**

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 18, 1995.

Decided Feb. 16, 1996.

Richard B. Bader, Washington, DC, Associate General Counsel, Federal Election Commission, argued the cause, for appellant, with whom Lawrence M. Noble, General Counsel, and David B. Kolker, Attorney, were on the briefs. Vivien Clair, entered an appearance.

Rex S. Heinke, Los Angeles, CA, argued the cause, for appellee, with whom Alicia J. Bentley and Julia A. Dahlberg, Washington, DC, were on the brief. Phillip H. Rudolph, Washington, DC, entered an appearance.

Before: EDWARDS, Chief Judge, SILBERMAN and GINSBURG, Circuit Judges.

SILBERMAN, Circuit Judge:

The Federal Election Commission appeals the district court's dismissal of its civil enforcement proceeding against Legi–Tech, Inc. The district court determined that *Federal Election Comm'n v. NRA Political Victory Fund,* 6 F.3d 821 (D.C.Cir.1993), *cert. dismissed,* —— U.S. ——, 115 S.Ct. 537, 130 L.Ed.2d 439 (1994), in which we held that the presence of two congressional officers as *ex officio* members of the Commission violated the Constitution, required dismissal in this case as well. We disagree and therefore reverse.

## I.

Legi–Tech marketed a computerized database service called the Campaign Contribu-

tion Tracking System (CCTS), which provided on-line subscribers with information on file with the FEC. Several of CCTS' subscribers used this information to solicit contributions, allegedly in violation of § 438(a)(4)'s prohibition on using information obtained from the FEC's files for the purpose of soliciting contributions.[1] After an investigation initiated in 1986, the FEC found probable cause to believe Legi–Tech had violated § 438(a)(4), and attempted conciliation as required by statute. 2 U.S.C. § 437g(a)(4) (1985). When settlement failed, the FEC filed a civil enforcement action seeking declaratory and injunctive relief and monetary penalties.

While the parties' cross-motions for summary judgment were pending, we decided *NRA*, 6 F.3d 821, holding that the presence of the two congressional officers as non-voting *ex officio* members of the FEC violated the Constitution and that the FEC therefore had no authority to bring the enforcement action.[2] We also determined, however, that the *ex officio* provision was severable. *Id.* at 827–28. Four days after our opinion issued, the FEC voted to reconstitute itself, excluding the *ex officio* members from all proceedings. A few weeks later the General Counsel submitted recommendations on all pending proceedings to the Commission and, after three days of deliberation, the reconstituted FEC voted to find probable cause that Legi–Tech had violated § 438(a)(4) and to authorize the General Counsel to continue this litigation.

Legi–Tech brought *NRA* to the district court's attention as supplemental authority and moved for dismissal. The district court granted the motion without prejudice to the FEC's ability to initiate a new proceeding. The court determined that it was required to impose the same remedy as in *NRA* under applicable retroactivity doctrine, *see Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, ——, 113 S.Ct. 2510, 2517, 125 L.Ed.2d 74 (1993), and that the FEC could not "circumvent" *Harper*'s mandate through its reconstitution and ratification of its former actions.

## II.

■ The FEC argues that Legi–Tech waived its separation of powers claim by failing to plead it as an affirmative defense pursuant to Fed.R.Civ.P. 8(c), in the answer to the complaint, or at least in the opposition to the motion for summary judgment.[3] Although the defense was raised prior to a ruling from the district court, Legi–Tech never moved formally to amend its answer. Legi–Tech—relying only on a Mississippi district court decision, *United States v. Mississippi Vocational Rehab. for the Blind*, 794 F.Supp. 1344, 1353 (S.D.Miss.1992)—contends that the unconstitutional composition of the FEC is not actually an affirmative defense under Rule 8(c) because it is not listed therein and it does not fall within the general category of any "matter constituting an avoidance or affirmative defense." In any event, its failure to plead the defense is excused under *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 142–43, 87 S.Ct. 1975, 1984–85, 18 L.Ed.2d 1094 (1967), because the *NRA* decision was a new rule of law. To which the FEC responds that *Curtis Publishing* did not change the general rule that a defense is waived unless it is foreclosed by precedent. *See Blonder–Tongue Labs., Inc. v. University of Illinois Found.*, 402 U.S. 313, 350, 91 S.Ct. 1434, 1453–54, 28 L.Ed.2d 788 (1971). *Curtis Publishing* was a special case because the Supreme Court's opinion in *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), was

---

1. "[A]ny information copied from [FEC] reports or statements may not be sold or used by any person for the purpose of soliciting contributions or for commercial purposes, other than using the name and address of any political committee to solicit contributions from such committee." 2 U.S.C. § 438(a)(4) (1985). After a civil enforcement action, several of CCTS' subscribers entered into a consent order with the FEC admitting that they had knowingly and willfully violated the Act.

2. We granted judgment for the defendant (by reversing the district court's judgment without remanding).

3. Legi–Tech does not dispute that if it waived the separation of powers claim, the waiver would constitute an independent ground for denying retroactive application of *NRA*. *See Reynoldsville Casket Co. v. Hyde*, —— U.S. ——, ——, 115 S.Ct. 1745, 1751, 131 L.Ed.2d 820 (1995).

so novel, was such a break with prior jurisprudence, that it was equivalent to overturning a precedent.

We think Legi–Tech's analysis is faulty; its assertion that the FEC is unconstitutionally composed cannot be regarded as anything other than an affirmative defense against an enforcement proceeding. As such, it must be raised in the pleading. *See Dole v. Williams Enter. Inc.,* 876 F.2d 186, 189 (D.C.Cir.1989); *cf. LaRouche v. FEC,* 28 F.3d 137, 139–40 (D.C.Cir.1994) (finding a defense waived when not raised in the initial appellate brief but only in the reply brief, when there were no special circumstances to justify departure from the general waiver rule). And we agree with the Commission that the *Curtis Publishing* exception was based on the creation of an entirely new constitutional right in *New York Times.* Here, not only is there no precedent adverse to Legi–Tech's separation of powers defense, but its defense was foreshadowed in *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). In *Buckley,* the Supreme Court held that the presence of unconstitutionally appointed *voting* members exercising wide-ranging powers, including enforcement responsibility, violated separation of powers principles, but it did not address the issue of whether the presence of *non-voting ex officio* members was also unconstitutional. *Id.* at 137–40, 96 S.Ct. at 690–92. Legi–Tech therefore should have raised the issue in its answer, and certainly, at minimum, should have moved to amend its answer after we decided *NRA.*

Nevertheless, waiver is not automatic. The district court has substantial discretion under FED.R.CIV.P. 15 to allow a party to amend its pleadings and to introduce authority or evidence at a later time. *See, e.g., Expertise, Inc. v. Aetna Finance Co.,* 810 F.2d 968, 973 (10th Cir.1987) (an affirmative defense is not waived by the failure to plead it in the answer when the issue was included in the pre-trial order); *Lucas v. United States,* 807 F.2d 414, 417–18 (5th Cir.1986) (no waiver of affirmative defense if the issue were raised in sufficient time to allow the other party to respond fully); 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRAC-

TICE AND PROCEDURE § 1278 (1990 & Supp. 1995). Absent any prejudice to the FEC—and we see none—it was not an abuse of discretion for the district court to consider Legi–Tech's submission of our opinion in *NRA,* although designated only as supplemental authority, as the functional equivalent of a motion to amend the pleadings to include the separation of powers claim.

### III.

It is common ground between the parties that, assuming Legi–Tech properly placed its defense in issue, the retroactivity doctrine of *Harper,* 509 U.S. 86, 113 S.Ct. 2510, requires the application of *NRA* to this case. The disputed issue is whether application of *NRA* dictates the same remedial *result*—dismissal of the suit. Legi–Tech argues that it does. Separation of powers is a structural constitutional defect that makes the FEC's entire investigation and decision to file suit void *ab initio.* Legi–Tech therefore does not have to show any specific prejudice to warrant dismissal. The FEC's later ratification of the probable cause finding and the civil enforcement action, as a matter of principle, cannot cure such a constitutional violation; a vote at the end of the administrative process does not remove the taint from the entire sequence of decisions. Even if such a cure were possible, it is argued, the FEC's "rubberstamp" of its prior decisions did not represent a real fresh deliberation. The FEC therefore must redo the statutorily required procedures in their entirety—*i.e.,* decide whether to initiate an investigation, investigate, decide whether to find probable cause that a violation occurred, attempt conciliation, and institute suit. Legi–Tech thus contends that dismissal of the case, as in *NRA,* is the appropriate remedy. As might be expected, the FEC resists that course, which it claims unnecessary, in part because of concern that the statute of limitations might bar reinitiation of the suit.

The *Harper* retroactivity doctrine, although it requires the same legal rule as in *NRA* to be applied in this case, does not inevitably require the same remedy. The FEC correctly notes that *Harper* itself did not impose the same remedy as the case it

followed. 509 U.S. at ———— ————, 113 S.Ct. at 2519–20. In *Reynoldsville Casket Co. v. Hyde*, —— U.S. ——, ——, 115 S.Ct. 1745, 1751, 131 L.Ed.2d 820 (1995), the Supreme Court explained that retroactivity does not always dictate the same remedy (or result) in the second case, as when a court finds:

> 1) *an alternative way of curing the constitutional violation*, or 2) a previously existing, independent legal basis (having nothing to do with retroactivity) for denying relief, or 3) ... a well-established general legal rule that trumps the new rule of law, which general rule reflects *both* reliance interests and other significant policy justifications, or 4) a principle of law, such as that of "finality" present in the *Teague* context, that limits the principle of retroactivity itself.

*Id.* (emphasis added; emphasis in original). *See also National Fuel Gas Supply Corp. v. F.E.R.C.*, 59 F.3d 1281, 1288 (D.C.Cir.1995). Here, as the FEC points out, the constitutional violation, which obliged us to dismiss the case in *NRA*, has been remedied—or at least the FEC purported to remedy the defect. The question before us then is whether the remedy was effective, thus falling within *Hyde*'s exception for an "alternative way of curing the constitutional violation." If the remedy adequately addressed the prejudice to Legi–Tech from the constitutional violation, then dismissal is neither necessary nor appropriate, and certainly is not compelled by *NRA*.

Legi–Tech's contention that the FEC's reconstitution and ratification is not an effective remedy because separation of powers is a "structural" constitutional defect that necessarily voids all prior decisions is overstated. In *Buckley*, 424 U.S. at 142, 96 S.Ct.

at 693, the Supreme Court accorded *de facto* validity to all FEC proceedings and allowed the FEC to continue to function pending congressional action, despite the more severe nature of the violation—the presence of unconstitutionally appointed *voting* members. *A fortiori*, the presence of *non-voting ex officio* members does not, as a matter of constitutional compulsion, void all prior FEC actions.[4]

Legi–Tech argues alternatively that this is the type of violation for which prejudice must be presumed.[5] To be sure, Legi–Tech was prejudiced, in the same manner as the NRA, when the FEC brought suit. But that does not resolve the question presented here; the relevant issue is the degree of continuing prejudice now, after the FEC's reconstitution and ratification, and whether that degree of prejudice—if it exists—requires dismissal. Legi–Tech contends the remedy was not adequate, so the FEC must repeat the entire administrative process and, only thereafter, may it bring suit. The FEC naturally asserts that its actions completely eliminated any prejudice to Legi–Tech. We are willing to assume that no matter what course was followed—other than a dismissal with prejudice (which not even Legi–Tech dares request)—some effects of the unconstitutional structure of the FEC are to be presumed to have impacted on the action. Nevertheless, it seems to us that there really is no ideal solution to the remedial problem in this case. Even were the Commission to return to square one—assuming the statute of limitations was not a bar—it is virtually inconceivable that its decisions would differ in any way the second time from that which occurred the first time. *A.L. Pharma, Inc. v.*

---

4. The FEC also argues, with some force, that the Commission's actions here were only voidable, not void, because the *ex officio* members could not vote even though they may have influenced the voting Commissioners. As a voidable decision, prejudice must be shown. *See Professional Air Traffic Controllers Org. v. Federal Labor Relations Auth.*, 685 F.2d 547, 564 (D.C.Cir.1982) (holding that illegal *ex parte* contacts with an agency only make agency action voidable, so prejudice must be shown); *NRA*, 6 F.3d at 826–27 (the non-voting *ex officio* members' presence only had the *potential* for influence, like an alternate juror).

5. It cites in support our statement in *NRA* that a litigant does not have to show less favorable treatment from the unconstitutionally composed FEC. 6 F.3d at 824. But that statement was made in the context of a standing analysis, not in the discussion of the appropriate remedy. And as noted below, the issue is not whether Legi–Tech was prejudiced by the original suit, which it undoubtedly was, but whether, given the FEC's remedial actions, there is sufficient remaining prejudice to warrant dismissal.

*Shalala,* 62 F.3d 1484, 1489 (D.C.Cir.1995); *American Fed'n of Gov't Employees v. Federal Labor Relations Auth.,* 778 F.2d 850, 862 n. 19 (D.C.Cir.1985) (citing cases for the proposition that remand to the agency is an unnecessary formality where the outcome is clear). After all, there had been no significant change in the membership of the Commission when the district court dismissed the suit, and surely the Commissioners would have every incentive to show that they had not been "influenced" by the unconstitutional presence of the *ex officio* members.

Legi–Tech may well be right in arguing that the Commission's "review" of the case after *NRA* was decided was nothing more than a "rubberstamp." But we cannot, as Legi–Tech argues, examine the internal deliberations of the Commission, at least absent a contention that one or more of the Commissioners were actually biased. *Cf. Professional Air Traffic Controllers Org. v. Federal Labor Relations Auth.,* 685 F.2d 547, 574–75 (D.C.Cir.1982) (ordering an extensive inquiry into *ex parte* contacts with Members of the agency based on allegations of extensive "behind-the-scenes machinations"). No such claim is raised here. We must bear in mind that we have no statutory authority to review the FEC's decision to sue (as compared, under this unique statute, to a decision not to sue, *see* 2 U.S.C. § 437g(a)(8) (1985)). In any event, forcing the Commission to start at the beginning of the administrative process, given human nature, promises no more detached and "pure" consideration of the merits of the case than the Commission's ratification decision reflected.

Under the circumstances, and bearing in mind the discretion the judiciary employs in the selection of remedies, we think much the better course is to take the FEC's post-reconstitution ratification of its prior decisions at face value and treat it as an adequate remedy for the *NRA* constitutional violation.[6] *Cf. Andrade v. Regnery,* 824 F.2d 1253, 1257 (D.C.Cir.1987) (no legally cognizable harm to employees from unconstitutional-

ly appointed administrator's development of reduction-in-force plan, when administrator was constitutionally appointed at time of plan's implementation). It might be said—although Legi–Tech has not—that we should defer to the district judge's discretion in this regard. But, she did not purport to exercise her remedial discretion; she seems to have considered a dismissal as required. In any event, we must assume that a number of other cases present the same issue, and we doubt the propriety of different district judges arriving at different remedial choices in the aftermath of *NRA.*[7]

\*    \*    \*    \*    \*    \*

The district court's grant of Legi–Tech's motion to dismiss is therefore

*Reversed.*

---

**6.** We therefore need not consider the FEC's further argument that dismissal is inappropriate because of the *de facto* officer doctrine.

**7.** At least one district judge has already done so. *See FEC v. NRA,* No. 85–1018 (D.D.C. Aug. 1, 1995) (memorandum and order denying motion to reconsider summary judgment for the FEC after the FEC's reconstitution).