# Designation of Acting Director of the Office of Management and Budget

The President's designation of an employee to act as Director of OMB under the Vacancies Reform Act, 5 U.S.C. §§ 3345–3349d, is itself the appointment of an inferior officer and satisfies the Appointments Clause, U.S. Const. art. II, § 2, cl. 2, even if the employee had not earlier been an "Officer of the United States."

June 12, 2003

MEMORANDUM OPINION FOR THE DEPUTY COUNSEL TO THE PRESIDENT

You have asked us to memorialize our advice that the President may designate, as the Acting Director of the Office of Management and Budget ("OMB"), an official serving as the Executive Associate Director of OMB.

## I.

The Director of OMB is appointed by the President, with the advice and consent of the Senate. 31 U.S.C. § 502(a) (2000). When the position of Director is vacant, the Deputy Director is authorized to act in that position. *Id.* § 502(b)(2). At present, both positions are vacant, and your question is whether the President, under the Vacancies Reform Act, 5 U.S.C. §§ 3345–3349d (2000), may designate OMB's Executive Associate Director to act as Director.[1]

The Vacancies Reform Act provides three means by which a Senate-confirmed position may be temporarily filled on an acting basis. First, the "first assistant to the office" may act. 5 U.S.C. § 3345(a)(1). Second, the President may designate, as the acting official, a Senate-confirmed officer from any agency. *Id.* § 3345(a)(2). Third, the President may designate any "officer or employee" who

---

[1] Under 31 U.S.C. § 502(f), if the positions of Director and Deputy Director are both vacant, "the President may designate an officer of [OMB] to act as Director." Because the various officials identified in section 502 are described as "officers," *id.* § 502(e), and those appointed under the Director's general hiring authority are described as "employees," *id*. § 521, the President's authority to name "an officer" of OMB as Acting Director under section 502(f) appears limited to the OMB officials identified in section 502. We understand that the Executive Associate Director is not one of the "officers" under that provision. Section 502(f), however, is not the exclusive statutory authority for temporarily filling the office of Director. Under 5 U.S.C. § 3347, the Vacancies Reform Act is itself the exclusive statutory means for temporarily filling vacancies in Senate-confirmed offices, except where another statute specifically provides for the President, a court, or the head of an executive department to name an acting officer, as 31 U.S.C. § 502(f) does. The Vacancies Reform Act does not provide, however, that where there is another statute providing for a presidential designation, the Vacancies Reform Act becomes unavailable. The legislative history squares with the conclusion that, in such circumstances, the Vacancies Reform Act may still be used: "In any event, even with respect to the specific positions in which temporary officers may serve under the specific statutes this bill retains, the Vacancies Act would continue to provide an alternative procedure for temporarily occupying the office." S. Rep. No. 105-250, at 17 (1998).

has served in the agency for at least 90 days in the preceding 365 days, in a position for which the rate of pay is GS-15 or higher. *Id.* § 3345(a)(3).[2]

We are informed that the Executive Associate Director would meet the statutory standards for designation under 5 U.S.C. § 3345(a)(3): namely, he has served in OMB for at least 90 of the 365 days preceding the vacancy in the office of Director, and his position during that time was one for which the pay was at least equal to a GS-15 rate. Thus, so far as the statute is concerned, the current Executive Associate Director of OMB is fully qualified to be designated as Acting Director.

## II.

Use of the Vacancies Reform Act in these circumstances could raise the question whether someone who is not already an "Officer[] of the United States" could temporarily fill a position that is an "Office" under the Appointments Clause of the Constitution.[3] U.S. Const. art. II, § 2, cl. 2. It is possible that the Executive Associate Director, although not an "officer" for purposes of 31 U.S.C. § 502, is already an "Officer of the United States" for purposes of the Appointments Clause, but we assume *arguendo* that he is not. The potential problem is that "any appointee exercising significant authority pursuant to the laws of the United States is an 'Officer of the United States,'" *Buckley v. Valeo*, 424 U.S. 1, 126 (1976), *see also Edmond v. United States*, 520 U.S. 651, 662 (1997), and therefore must have been appointed in compliance with the Appointments Clause. The employees who serve in acting positions would appear to exercise such authority, *see Andrade v. Regnery*, 824 F.2d 1253, 1256 (D.C. Cir. 1987) (an Acting Administrator of a Department of Justice component had authority to discharge employees because he was properly appointed as the Deputy Administrator, a statutory office), and would therefore be subject to this requirement.

In our view, the President's designation of an employee of OMB to act as Director under the Vacancies Reform Act would itself be the appointment of an inferior officer and would satisfy the Appointments Clause. Although the Appointments Clause provides generally that "Officers of the United States" must be appointed by the President, with the advice and consent of the Senate, it further

---

[2] An employee serving under the Vacancies Reform Act would be subject to the time limits in that statute, 5 U.S.C. § 3346, while an officer serving under 31 U.S.C. § 502(f) would not be so limited and could serve as long as is reasonable under the circumstances. *See Status of the Acting Director, Office of Management and Budget*, 1 Op. O.L.C. 287 (1977).

[3] This question does not arise for anyone who is already an "Officer of the United States" and who was appointed after the enactment of the Vacancies Reform Act, as any duties arising under the Vacancies Reform Act can be regarded as part and parcel of the office to which he was appointed. *See Weiss v. United States*, 510 U.S. 163, 174 (1994). (The same would be true for anyone who was appointed before enactment of the Vacancies Reform Act and whose acting duties pursuant to that Act were germane to his office. *See id.* at 174–76.)

provides that "Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2. To assess the constitutionality of the proposed designation, we must answer two questions: first, whether the Acting Director of OMB is a principal officer, who must have been appointed by the President with the advice and consent of the Senate, or whether he is an inferior officer who could be appointed by the President alone; and second, if he is an inferior officer, whether he has been "appoint[ed]" as such by the President, within the meaning of the Appointments Clause. *Id.*

## A.

Under the principles of the Supreme Court's decisions in *Morrison v. Olson*, 487 U.S. 654, 671–72 (1988), and *Edmond*, 520 U.S. at 662, 663, the Director of OMB is a principal officer. He is subject to removal by no one except the President. *See Keim v. United States*, 177 U.S. 290, 293 (1900) ("[i]n the absence of specific provision to the contrary, the power of removal from office is incident to the power of appointment"). His responsibilities cover a wide range of fiscal and management matters, reach throughout the Executive Branch, and permit him to make policy of the greatest importance. *See, e.g.*, 31 U.S.C. § 502(a) (Director's authority over subordinates in OMB whose responsibilities are set out in 31 U.S.C. §§ 503, 504). His tenure is not limited in time to the completion of any particular task. And he is to administer OMB "[u]nder the direction of the President," rather than some official below the President. *Id.* § 502(a).[4]

Although the position of Director is a principal office, we believe that an Acting Director is only an inferior officer.[5] In *United States v. Eaton*, 169 U.S. 331 (1898), the Supreme Court held that Congress could vest the appointment of a "vice consul" in the President alone and could provide that the vice consul would act for the consul, even though the consul was a principal officer: "Because the

---

[4] When Congress first passed a bill to subject the Director of OMB to Senate confirmation, President Nixon vetoed it, principally on the ground that the bill would unconstitutionally have removed the incumbent appointed by the President alone, but also on the ground that the "nature of the position[]," involving "advice and staff support in the performance of [the President's] budgetary and management responsibilities," conflicted with making the position Senate-confirmed. *Pub. Papers of Pres. Richard M. Nixon* at 539–40 (1973). The history of the position before it was Senate-confirmed, along with the considerations about its "nature," might be argued to show that the office is not a "principal" one. However, although appointment with Senate confirmation would not refute this argument (since that mode of appointment is the default for all officers, principal and inferior), President Nixon wrote before the decisions in *Morrison* and *Edmond*, and we therefore do not question here that the Director of OMB is a principal officer.

[5] Arguably, an acting official is not an "officer" because of the temporary nature of his duties. *See, e.g.*, *Auffmordt v. Hedden*, 137 U.S. 310, 327 (1890); *Appointment of Department of Interior Associate Deputy Secretary*, No. B-290,233, 2002 WL 31388352, at *3 (Oct. 22) (General Counsel, GAO). However, such an argument seems problematic, especially where the acting official is temporarily the head of an agency and otherwise occupies a permanent full-time position in the United States government.

subordinate officer is charged with the performance of the duty of the superior for a limited time, and under special and temporary conditions, he is not thereby transformed into the superior and permanent official. To so hold would render void any and every delegation of power to an inferior to perform under any circumstances or exigency the duties of a superior officer, and the discharge of administrative duties would be seriously hindered." *Id.* at 343 (quoted with approval in *Morrison*, 487 U.S. at 672–73). This conclusion, we believe, is not called into question by the Court's statement in *Edmond* that "'inferior officers' are officers whose work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate." 520 U.S. at 663. The Court held only that "[g]enerally speaking" an inferior officer is subordinate to an officer other than the President. *Id.* at 662. Moreover, *Edmond* did not deal with temporary officers and cited *Eaton* with apparent approval. *Id.* at 661. Under *Eaton*, we believe, the Acting Director of OMB is an inferior officer.

## B.

Under the Vacancies Reform Act, the President "may direct an officer or employee of [an] Executive agency to perform the functions and duties of [a] vacant office," provided that the officer or employee has served, for at least 90 days during the year before the vacancy, in a position for which the pay is at least the level of GS-15. 5 U.S.C. § 3345(a)(3). By its express terms, this provision can enable an "employee" to act in the vacant position of a Senate-confirmed officer. In our view, an "employee" so empowered is, temporarily, a properly appointed inferior Officer of the United States.[6]

Under the Appointments Clause, "the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone." U.S. Const. art. II, § 2, cl. 2. Under the provision of the Vacancies Reform Act that would be used here, 5 U.S.C. § 3345(a)(3), Congress has vested in "the President (and only the President)" the power to name an employee who will be an acting officer. Congress thus has employed one of the modes by which it may provide for appointment of an inferior officer.

We recognize, of course, that the Vacancies Reform Act does not use the language of appointment. Under 5 U.S.C. § 3345(a)(3), the President "direct[s]" an employee to perform duties. We recognize, too, that the Supreme Court's decision in *Weiss* placed considerable stress on Congress's use of the terms "detail" and "assign" in statutes governing military officers when it held that Congress had not required a separate appointment for military judges to serve on courts martial: "Congress repeatedly and consistently distinguished between an office that would

---

[6] We do not address whether any official who becomes an acting officer pursuant to 5 U.S.C. § 3345(a)(1) has thereby been appointed to hold a temporary office.

require a separate appointment and a position or duty to which one could be 'assigned' or 'detailed' by a superior officer." 510 U.S. at 172.

We nonetheless believe that the "directs" language of the Vacancies Reform Act should be understood to provide the means for an appointment of an employee as an acting officer. The principle of constitutional avoidance requires a construction of the statute that removes serious constitutional doubt: "[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988) (citation omitted). The Vacancies Reform Act, by its plain terms, allows an "employee" to carry out the "functions and duties" of an "officer of an Executive agency" who "dies, resigns, or is otherwise unable to perform the functions and duties of the office." 5 U.S.C. § 3345(a). By understanding the President's "direct-[ion]" under 5 U.S.C. § 3345(a)(3) to involve an appointment of an employee as an inferior officer, we avoid the serious constitutional issue that could be raised by a mere employee's "exercising significant authority pursuant to the laws of the United States." *Buckley*, 424 U.S. at 126. For similar reasons, we believe that *Weiss* does not foreclose our conclusion here. The Court's discussion was in the context of establishing that the appointment of military judges did not violate the Appointments Clause. We would not readily extend that analysis to a different context, where it would raise a question about the constitutionality of a statute. Furthermore, because the Vacancies Reform Act, unlike the statute at issue in *Weiss*, aims at maintaining the continuity of government, including in emergencies, we would not impute to Congress any intent to make the efficacy of its statute depend on the characterization of the President's action, as between an assignment of duties and an appointment.

M. EDWARD WHELAN III
*Acting Assistant Attorney General*
*Office of Legal Counsel*
