# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1179

_____

Robert C. McChesney, in his official capacity as Treasurer of Bart McLeay for U.S. Senate, Inc.; Bart McLeay for U.S. Senate, Inc.,

*Plaintiffs - Appellants*,

v.

Federal Election Commission,

*Defendant - Appellee*,

Caroline C. Hunter, in her official capacity as Chair of the Federal Election Commission,[1]

*Defendant - Appellee,*

United States of America,

*Defendant.*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: May 15, 2018
Filed: August 15, 2018

_____

---

[1]Appellee Hunter is automatically substituted for her predecessor under Federal Rule of Appellate Procedure 43(c)(2).

Before SMITH, Chief Judge, BEAM and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

In 2015, the Federal Election Commission imposed a civil penalty of $12,122 on Robert McChesney as treasurer for Bart McLeay's campaign for United States Senate in Nebraska. The Commission found that McChesney failed to file certain notices of campaign contributions that must be reported within 48 hours. McChesney does not dispute the facts of the filing violation, but he sued on the ground that the Commission lacked authority to impose the penalty. The district court[2] dismissed the action, and we affirm.

I.

The Federal Election Commission has exclusive jurisdiction over civil enforcement of federal campaign finance laws. 52 U.S.C. § 30106(b)(1). To bring a civil enforcement action, the Commission typically must follow a lengthy multi-step process involving attempts to reach a conciliation agreement with the violating party and culminating in a civil action filed in federal district court. 52 U.S.C. § 30109(a)(1)-(6). But beginning in January 2000, Congress created an expedited process for the Commission to impose administrative fines. *Id.* § 30109(a)(4)(C). For violations of certain disclosure requirements, the administrative fine scheme allows the Commission to impose directly civil money penalties "under a schedule of penalties which is established and published by the Commission." *Id.* § 30109(a)(4)(C)(i)(II). The penalty schedule must "take[] into account the amount of the violation involved, the existence of previous violations by the person, and such other factors as the Commission considers appropriate." *Id.* A person fined under the

[2]The Honorable Laurie Smith Camp, Chief Judge, United States District Court for the District of Nebraska.

-2-

expedited process has a right to be heard before the Commission and to challenge any penalty in a district court. *Id.* § 30109(a)(4)(C)(ii)-(iii).

The Commission promulgated the penalty schedule and regulations implementing the administrative fine program in May 2000. *Administrative Fines*, 65 Fed. Reg. 31,787 (May 19, 2000) (codified as amended at 11 C.F.R. §§ 111.30-111.46). The agency proceeded through notice-and-comment rulemaking under the Administrative Procedure Act, 5 U.S.C. § 553. In keeping with a sunset provision in the authorizing statute, 2 U.S.C. § 437g note (2000) (Effective Date of 1999 Amendment), the Commission set the program to end on December 31, 2001. 11 C.F.R. § 111.30 (2000).

Congress amended the sunset provision several times, including most recently in December 2013. At that time, Congress extended authority for the administrative fine program to include violations through December 31, 2018. Pub. L. 113-72, § 1, 127 Stat. 1210, 1210 (2013). As it did for each previous extension, the Commission updated its regulations to correspond to the new expiration date. *Extension of Administrative Fines Program*, 79 Fed. Reg. 3302, 3302-03 (Jan. 21, 2014) (codified at 11 C.F.R. § 111.30). The Commission adopted the amendment through its notational "tally vote" procedure without holding a public meeting. The Commission then promulgated the amended regulations without notice and comment because it concluded the amendment fell within the "good cause" exception of the APA, 5 U.S.C. § 553(b)(B). 79 Fed. Reg. at 3302.

McChesney served as the treasurer for Bart McLeay's Senate campaign in Nebraska during the 2014 primary election. Following the primary election, the Commission notified McChesney that it intended to impose a civil monetary penalty under the administrative fine program. The Commission asserted that McChesney had failed to submit certain notices required by 52 U.S.C. § 30104(a)(6)(A). That provision requires a campaign to notify the Commission within 48 hours of

contributions of $1,000 or more received after the 20th day but more than 48 hours before the election. *See also* 11 C.F.R. § 111.44(a). McChesney objected to the penalty, in part on the ground that "it is not based on an authorized schedule of penalties established by the Commission." The Commission ultimately disagreed and imposed a civil penalty of $12,122.

McChesney challenged the penalty in the district court. He argued that the Commission never validly established the 2014 penalty schedule. He complained that the Commission, among other things, adopted the 2014 extension without conducting a new evaluative review of the penalty schedule, holding a public meeting, or complying with its tally vote procedure. In response to the Commission's motion to dismiss, McChesney objected that the Commission had not yet provided a full administrative record. The district court rejected each of McChesney's arguments and granted the Commission's motion to dismiss.

We review a district court's grant of a motion to dismiss *de novo*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Section 30109(a)(4)(C) does not specify the grounds for setting aside a civil penalty imposed by the Commission, but we follow the lead of other courts and adopt those listed in the Administrative Procedure Act, 5 U.S.C. § 706. *See Combat Veterans for Cong. Political Action Comm. v. FEC*, 983 F. Supp. 2d 1, 10 (D.D.C. 2013), *aff'd*, 795 F.3d 151 (D.C. Cir. 2015). Under the APA, a reviewing court will set aside an agency action if the action is "not in accordance with law" or is "in excess of statutory jurisdiction, authority, or limitations," taking due account of the rule of prejudicial error. 5 U.S.C. § 706(2)(A), (C).

II.

As a preliminary matter, McChesney argues that the district court contravened the APA by dismissing his challenge without first requiring the Commission to submit the complete administrative record. The APA, however, is not so exacting; it provides that "the court shall review the whole record *or those parts of it cited by a party*." 5 U.S.C. § 706 (emphasis added). The parties dispute whether the Commission has submitted all portions of the administrative record cited in McChesney's complaint. We need not resolve that dispute, because the district court had sufficient material to resolve the motion, and McChesney was not prejudiced by any shortcoming in the record.

On a motion to dismiss, a court "must primarily consider the allegations in the complaint, although matters of public and administrative record referenced in the complaint may also be taken into account." *Deerbrook Pavilion, LLC v. Shalala*, 235 F.3d 1100, 1102 (8th Cir. 2000). We accept as true the allegations in McChesney's complaint and draw all reasonable inferences in his favor. *See Petrie ex rel. PPW Royalty Tr. v. Barton*, 841 F.3d 746, 753 (8th Cir. 2016). If part of the administrative record is missing, then McChesney receives the benefit of the doubt: his representation about the record is presumed true. It was therefore not reversible error for the district court to rule based on the record that was available to it. *See Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993).

III.

The Commission also presents a preliminary issue. It contends that McChesney did not bring a proper challenge because he did not assert one of the three grounds enumerated in the Commission's regulation on challenges to a civil penalty, 11 C.F.R. § 111.35. The regulation provides that the respondent's written response "must assert" at least one of three enumerated grounds: that the

Commission relied on factual error, that the Commission improperly calculated the penalty, or that the individual had a justifiable excuse for his failure to comply. *Id.* § 111.35(b). The regulation on its face, however, applies only to a respondent's written response to the Commission. The rule does not purport to limit the grounds on which the sanctioned person may challenge the penalty before the district court, and the Commission would be hard pressed to justify such a limitation. The APA permits a court to set aside an agency action if it is not in accordance with law or is beyond the agency's statutory authority, *see* 5 U.S.C. § 706(2)(A), (C), and the Commission cannot by regulation eliminate those statutory grounds for relief.

## IV.

McChesney's challenge to the fine turns on statutory language that the Commission may impose a fine "under a schedule of penalties *which is established and published by the Commission*." 52 U.S.C. § 30109(a)(4)(C)(i)(II) (emphasis added). He acknowledges that the Commission "published" the 2014 penalty schedule, but advances three reasons why the Commission supposedly never "established" it.

## A.

McChesney first contends that the Commission did not establish the 2014 penalty schedule because the Commission did not conduct what he calls a new "evaluative review" before publishing it. He observes that § 30109(a)(4)(C)(i)(II) requires that the Commission's penalty schedule take into account certain factors, including the amount of the violation involved and the existence of any previous violations by the individual, and "such other factors as the Commission considers appropriate." He then urges that Congress, by including a series of sunset provisions for the administrative fine program, commanded the Commission to conduct a new

"evaluative review" of these statutory factors every time the program was set to expire.

We are not convinced that the statute required the Commission in 2014 to conduct the sort of evaluative review that McChesney seeks. The text of § 30109(a)(4)(C)(i)(II) requires only that the schedule take into account the listed statutory factors. The Commission's previously established penalty schedule took those factors into account. The same schedule continued to take the factors into account when the Commission republished it in January 2014.

The sunset provision does not support McChesney's reading of the statute. The provision specifies that the administrative fine program "shall apply with respect to violations that relate to reporting periods that begin on or after January 1, 2000, and that end on or before" the specified expiration date. § 30109(a)(4)(C)(v). This language shows that Congress considered the program to operate over a single uninterrupted period beginning on January 1, 2000. The 2013 amendment of the sunset provision merely substituted "December 31, 2018" for "December 31, 2013," in what the law characterized as an "extension" of the program. Pub. L. 113-72, § 1, 127 Stat. at 1210. By increasing the duration of the administrative fine program from 2013 to 2018, Congress allowed the Commission to continue the regulations that were previously adopted. The extension did not require the Commission to conduct a new "evaluative review."

B.

McChesney next contends that the Commission did not "establish" the 2014 penalty schedule because it did not adopt the schedule in a public meeting. According to McChesney, the Sunshine Act, 5 U.S.C. § 552b, and the Commission's regulations implementing the Sunshine Act, 11 C.F.R. §§ 2.2, 2.3, required the Commission to take this procedural step.

The Sunshine Act, subject to exceptions not relevant here, states that "every portion of every meeting of an agency shall be open to public observation." 5 U.S.C. § 552b(b). But the Sunshine Act "does not require that meetings be held in order to conduct agency business; rather, that statute requires only that, if meetings are held, they be open to the public." *R.R. Comm'n of Tex. v. United States*, 765 F.2d 221, 230 (D.C. Cir. 1985). As a result, agencies do not run afoul of the Sunshine Act when they conduct agency business without a meeting—for example, when they conduct agency business through notational voting. *See id.* Because the Commission adopted the 2014 penalty schedule through its notational tally vote procedure without a meeting, it did not violate the Sunshine Act's requirement that any meeting of the agency must be open to the public.

The Commission also did not violate its own regulations. Consistent with the Sunshine Act, the Commission's regulations require that "every portion of every Commission meeting shall be open to public observation." 11 C.F.R. § 2.3(b). The Commission's regulations, however, exclude from the definition of meeting "the process of notation voting by circulated memorandum for the purpose of expediting consideration of routine matters." 11 C.F.R. § 2.2(d)(2).

McChesney argues that adoption of the 2014 penalty schedule was not a "routine" matter, and that the notational voting therefore was a "meeting" that should have been open to the public. Drawing on decisions under the Freedom of Information Act and the Foreign Corrupt Practices Act, McChesney asserts that "routine" matters are those in which the "public could not reasonably be expected to have an interest" or those of "merely internal significance." *See Dep't of the Air Force v. Rose*, 425 U.S. 352, 367-69 (1976); *United States v. Duperval*, 777 F.3d 1324, 1334-35 (11th Cir. 2015). But the meaning of "routine" in those statutes was informed by a specific statutory definition, set of examples, or volume of legislative history that is not applicable here. The ordinary meaning of "routine" is "of a commonplace or repetitious character: ordinary, usual." *Webster's Third New*

*International Dictionary* 1981 (2002). In our view, updating the expiration date of the administrative fine program to match Congress's 2013 amendment is sufficiently "commonplace" or "ordinary" to qualify as routine within the meaning of the regulation. The Commission therefore did not violate its rules implementing the Sunshine Act when it adopted the 2014 penalty schedule by notational voting without a public meeting.

In any event, a violation of the Sunshine Act or its implementing regulations would not undermine the validity of the 2014 penalty schedule. An agency's violation of the Sunshine Act does not provide a basis for setting aside the agency's action; the ordinary relief would be an injunction against future violations or an order to produce a transcript of the non-public meeting. *See* 5 U.S.C. § 552b(h); *Pan Am. World Airways, Inc. v. CAB*, 684 F.2d 31, 36 (D.C. Cir. 1982) (per curiam).

McChesney seeks to avoid this general rule by disavowing any request for a remedy under the Sunshine Act. He asserts that if the Commission failed to comply with the Sunshine Act, then it did not "establish" the 2014 schedule "in accordance with law," and the court should thus set aside the schedule. But the Sunshine Act undermines McChesney's reasoning. The Act clarifies that nothing in § 552b authorizes a reviewing court, solely on the basis of a Sunshine Act violation, "to set aside, enjoin, or invalidate any agency action (other than an action to close a meeting or to withhold information under this section) taken or discussed at any agency meeting out of which the violation of this section arose." *Id.* § 552b(h)(2). Section 552b(h)(2) thereby implies that unless an agency action itself violates the Sunshine Act, the Act does not affect the action's validity.

One court, citing legislative history, suggested that a court may grant broader relief when a violation of the Sunshine Act is serious, intentional, and prejudicial to the rights of a person involved in the agency proceeding. *See Pan Am.*, 684 F.2d at 36-37. Assuming that a court has such authority, it would not apply here, because

McChesney has not shown prejudice. Although he incurred a monetary penalty, McChesney has not alleged that his injury arose from the Commission's decision not to hold a public meeting or from his inability to access the Commission's internal correspondence. Therefore, the district court properly declined to set aside the 2014 penalty schedule based on an alleged violation of the Sunshine Act or implementing regulations.

C.

McChesney's third submission is that the Commission did not "establish" the 2014 penalty schedule because it failed to comply with the tally vote procedure set forth in the Commission's Directive 52. As of 2014, Directive 52 provided that "[v]otes on circulations may only be made via a signed ballot delivered to the Commission Secretary's Office." Directive 52 ¶ IV (2008). McChesney contends that under this procedure, each commissioner was required to return a marked and signed paper ballot to authorize the 2014 extension of the administrative fine program. Because there is no record of any returned paper ballots for the vote, McChesney concludes that the Commission failed to establish the 2014 penalty schedule.

The lack of returned paper ballots, however, does not give rise to a plausible claim that the Commission failed to comply with Directive 52. The phrase "signed ballot delivered" in Directive 52 did not require a paper document. Electronic signatures and electronic delivery were well known in the law before 2008. *See, e.g.*, Electronic Signatures in Global & National Commerce Act, Pub. L. 106-229, § 101, 114 Stat. 464, 464 (2000) (codified at 15 U.S.C. § 7001); Unif. Elec. Transactions Act § 7 (Unif. Law Comm'n 1999). And the Commission later made explicit that "a signed ballot" includes a ballot submitted electronically or an e-mail containing a commissioner's vote. *See* Directive 52 ¶ IV (2016). That the commissioners allegedly did not return signed paper ballots, therefore, does not by itself establish a

plausible claim that the Commission failed to comply with its tally vote procedures. Even where an agency employs an incorrect voting procedure, moreover, a person challenging the results of the vote must show prejudice to gain relief. *See Combat Veterans*, 795 F.3d at 156-57. McChesney has not alleged that the outcome would have been any different if the commissioners had used only signed paper ballots to vote on the 2014 penalty schedule. McChesney thus did not plead a plausible claim for relief based on alleged flaws in the Commission's voting procedure.[3]

\* \* \*

The judgment of the district court is affirmed.

BEAM, Circuit Judge, concurs in the result.

———————————————————

[3]McChesney's opening brief did not meaningfully argue that the Commission failed to comply with the notice-and-comment requirements of the Administrative Procedure Act, so this contention is waived despite argument in his reply brief. *Chay-Velasquez v. Ashcroft*, 367 F.3d 751, 756 (8th Cir. 2004).