**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

<table>
<tr><td>

CONSUMER FINANCIAL PROTECTION BUREAU,

*Petitioner-Appellee*,

v.

SEILA LAW LLC,

*Respondent-Appellant.*

</td><td>

No. 17-56324

D.C. No.
8:17-cv-01081-
JLS-JEM

OPINION

</td></tr>
</table>

Appeal from the United States District Court
for the Central District of California
Josephine L. Staton, District Judge, Presiding

Argued and Submitted January 8, 2019
Pasadena, California

Filed May 6, 2019

Before: Susan P. Graber and Paul J. Watford, Circuit
Judges, and Jack Zouhary,[*] District Judge.

Opinion by Judge Watford

---

[*] The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

## SUMMARY[**]

---

### Consumer Financial Protection Bureau

The panel affirmed the district court's order granting the petition of the Consumer Financial Protection Bureau ("CFPB") to enforce Seila Law LLC's compliance with the CFPB's civil investigative demand to respond to seven interrogatories and four requests for documents.

The CFPB is headed by a single Director who exercises substantial executive power but can be removed by the President only for cause.

The panel held that the CFPB's structure is constitutionally permissible.  The panel held that the Supreme Court's separation-of-powers decisions in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), and *Morrison v. Olson*, 487 U.S. 654 (1988), were controlling.  Those cases indicate that the for-cause removal restriction protecting the CFPB's Director does not "impede the President's ability to perform his constitutional duty" to ensure that the laws are faithfully executed.  *Morrison*, 487 U.S. at 691.

The panel rejected Seila Law's contention that the civil investigative demand violated the Consumer Financial Protection Act's practice-of-law exclusion, which provides that the CFPB may not exercise "authority with respect to an activity engaged in by an attorney as part of the practice of

---

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

law under the laws of a State in which the attorney is licensed to practice law." 12 U.S.C. § 5517(e)(1).  The panel held that one of the exceptions to the practice-of-law exclusion applied - Section 5517(e)(3) – which empowered the CFPB to investigate whether Seila Law was violating the Telemarketing Sales Rule, 75 Fed,. Reg. 48,458-01, 48,467-69 (Aug. 10, 2010).

The panel also rejected Seila Law's contention that the civil investigative demand violated 12 U.S.C. § 5562(c)(2) because the demand provided information sufficient to put Seila Law on notice of the nature of the conduct the CFPB was investigating, and was not so general as to raise vagueness or overbreadth concerns.

## COUNSEL

Anthony Bisconti (argued) and Thomas H. Bienert Jr., Bienert Miller & Katzman PLC, San Clemente, California, for Respondent-Appellant.

Kevin E. Friedl (argued) and Christopher J. Deal, Attorneys; Steven Y. Bressler, Assistant General Counsel; John R. Coleman, Deputy General Counsel; Mary McLeod, General Counsel; Consumer Financial Protection Bureau, Washington, D.C.; for Petitioner-Appellee.

**OPINION**

WATFORD, Circuit Judge:

The Consumer Financial Protection Bureau (CFPB) is investigating Seila Law LLC, a law firm that provides a wide range of legal services to its clients, including debt-relief services. The CFPB is seeking to determine whether Seila Law violated the Telemarketing Sales Rule, 16 C.F.R. pt. 310, in the course of providing debt-relief services to consumers. As part of its investigation, the CFPB issued a civil investigative demand (CID) to Seila Law that requires the firm to respond to seven interrogatories and four requests for documents. *See* 12 U.S.C. § 5562(c)(1). After Seila Law refused to comply with the CID, the CFPB filed a petition in the district court to enforce compliance. *See* § 5562(e)(1). The district court granted the petition and ordered Seila Law to comply with the CID, subject to one modification that the CFPB does not contest. Seila Law challenges the district court's order on two grounds, both of which we reject.

I

Seila Law's main argument is that the CFPB is unconstitutionally structured, thereby rendering the CID (and everything else the agency has done) unlawful. Specifically, Seila Law argues that the CFPB's structure violates the Constitution's separation of powers because the agency is headed by a single Director who exercises substantial executive power but can be removed by the President only for cause. The arguments for and against that view have been thoroughly canvassed in the majority, concurring, and dissenting opinions in *PHH Corp. v. CFPB*, 881 F.3d 75 (D.C. Cir. 2018) (en banc). We see no need to re-plow the same ground here. After providing a summary

of the CFPB's structure, we explain in brief why we agree with the conclusion reached by the *PHH Corp.* majority.

Congress created the CFPB in 2010 when it enacted the Consumer Financial Protection Act, 12 U.S.C. §§ 5481–5603. The Act confers upon the CFPB a broad array of powers to implement and enforce federal consumer financial laws, with the overarching goals of "ensuring that all consumers have access to markets for consumer financial products and services and that markets for consumer financial products and services are fair, transparent, and competitive." 12 U.S.C. § 5511(a). The agency's powers include, among other things, the authority to promulgate rules (§ 5512), conduct investigations (§ 5562), adjudicate administrative enforcement proceedings (§ 5563), and file civil actions in federal court (§ 5564). Congress classified the CFPB as "an Executive agency" and chose to house it within the Federal Reserve System. § 5491(a).

The CFPB is led by a single Director appointed by the President with the advice and consent of the Senate. § 5491(b). The Director serves for a term of five years that may be extended until a successor has been appointed and confirmed. § 5491(c)(1)–(2). The Director may be removed by the President only for "inefficiency, neglect of duty, or malfeasance in office." § 5491(c)(3). A provision of this sort is commonly referred to as a "for cause" restriction on the President's removal authority.

Seila Law contends that an agency with the CFPB's broad law-enforcement powers may not be headed by a single Director removable by the President only for cause. That argument is not without force. The Director exercises substantial executive power similar to the power exercised by heads of Executive Branch departments, at least some of whom, it has long been assumed, must be removable by the

President at will. The Supreme Court's separation-of-powers decisions, in particular *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), and *Morrison v. Olson*, 487 U.S. 654 (1988), nonetheless lead us to conclude that the CFPB's structure is constitutionally permissible.

In *Humphrey's Executor*, the Court rejected a separation-of-powers challenge to the structure of the Federal Trade Commission (FTC), an agency similar in character to the CFPB. The petitioner in that case argued that the FTC's structure violates Article II of the Constitution because the agency's five Commissioners, although appointed by the President with the advice and consent of the Senate, may be removed by the President only for cause. The Court rejected that argument, relying heavily on its determination that the agency exercised mostly quasi-legislative and quasi-judicial powers, rather than purely executive powers. 295 U.S. at 628, 631–32. The Court reasoned that it was permissible for Congress to decide, "in creating quasi-legislative or quasi-judicial agencies, to require them to act in discharge of their duties independently of executive control." *Id.* at 629. The for-cause removal restriction at issue there, the Court concluded, was a permissible means of ensuring that the FTC's Commissioners would "maintain an attitude of independence" from the President's control. *Id.*

This reasoning, it seems to us, applies equally to the CFPB, whose Director is subject to the same for-cause removal restriction at issue in *Humphrey's Executor*. Like the FTC, the CFPB exercises quasi-legislative and quasi-judicial powers, and Congress could therefore seek to ensure that the agency discharges those responsibilities independently of the President's will. In addition, as the *PHH Corp.* majority noted, the CFPB acts in part as a financial regulator, a role that has historically been viewed

as calling for a measure of independence from Executive Branch control. 881 F.3d at 91–92.

To be sure, there are differences between the CFPB and the FTC as it existed when *Humphrey's Executor* was decided in 1935. The Court's subsequent decision in *Morrison v. Olson*, however, precludes us from relying on those differences as a basis for distinguishing *Humphrey's Executor*.

The most prominent difference between the two agencies is that, while both exercise quasi-legislative and quasi-judicial powers, the CFPB possesses substantially more executive power than the FTC did back in 1935. But Congress has since conferred executive functions of similar scope upon the FTC, and the Court in *Morrison* suggested that this change in the mix of agency powers has not undermined the constitutionality of the FTC. *See Morrison*, 487 U.S. at 692 n.31. Indeed, in *Morrison* the Court upheld the constitutionality of a for-cause removal restriction for an official exercising one of the most significant forms of executive authority: the power to investigate and prosecute criminal wrongdoing. And more recently, in *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010), the Court left undisturbed a for-cause removal restriction for Commissioners of the Securities and Exchange Commission, who are charged with overseeing a board that exercises "significant executive power." *Id.* at 514.

The other notable difference between the two agencies is that the CFPB is headed by a single Director whereas the FTC is headed by five Commissioners. Some have found this structural difference dispositive for separation-of-powers purposes. *See PHH Corp.*, 881 F.3d at 165–66 (Kavanaugh, J., dissenting). But as the *PHH Corp.* majority

noted, *see id.* at 98–99, the Supreme Court's decision in *Humphrey's Executor* did not appear to turn on the fact that the FTC was headed by five Commissioners rather than a single individual. The Court made no mention of the agency's multi-member leadership structure when analyzing the constitutional validity of the for-cause removal restriction at issue. *See Humphrey's Executor*, 295 U.S. at 626–31. And the Court's subsequent decision in *Morrison* seems to preclude drawing a constitutional distinction between multi-member and single-individual leadership structures, since the Court in that case upheld a for-cause removal restriction for a prosecutorial entity headed by a single independent counsel. 487 U.S. at 696–97; *see PHH Corp.*, 881 F.3d at 113 (Tatel, J., concurring). As the *PHH Corp.* majority noted, if an agency's leadership is protected by a for-cause removal restriction, the President can arguably exert more effective control over the agency if it is headed by a single individual rather than a multi-member body. *See* 881 F.3d at 97–98.

In short, we view *Humphrey's Executor* and *Morrison* as controlling here. Those cases indicate that the for-cause removal restriction protecting the CFPB's Director does not "impede the President's ability to perform his constitutional duty" to ensure that the laws are faithfully executed. *Morrison*, 487 U.S. at 691. The Supreme Court is of course free to revisit those precedents, but we are not.

## II

Seila Law next argues that the CFPB lacked statutory authority to issue the CID. It asserts two separate grounds in support of this argument.

First, Seila Law contends that the CID violates the Consumer Financial Protection Act's practice-of-law

exclusion. That exclusion provides, with important exceptions, that the CFPB "may not exercise any supervisory or enforcement authority with respect to an activity engaged in by an attorney as part of the practice of law under the laws of a State in which the attorney is licensed to practice law." 12 U.S.C. § 5517(e)(1). Seila Law argues that the CID is invalid because it requests information related to Seila Law's activities in providing legal services to its clients. Specifically, the CID seeks information relevant to determining whether Seila Law has violated the Telemarketing Sales Rule "in the advertising, marketing, or sale of debt relief services or products, including but not limited to debt negotiation, debt elimination, debt settlement, and credit counseling."

The district court correctly held that one of the exceptions to § 5517(e)(1)'s practice-of-law exclusion applies here. Section 5517(e)(3) states: "Paragraph (1) shall not be construed so as to limit the authority of the Bureau with respect to any attorney, to the extent that such attorney is otherwise subject to any of the enumerated consumer laws or the authorities transferred under subtitle F or H." Subtitle H empowers the CFPB to enforce the Telemarketing Sales Rule, 16 C.F.R. pt. 310, a consumer law that does not exempt attorneys from its coverage even when they are engaged in providing legal services. *See* 15 U.S.C. § 6102; Telemarketing Sales Rule, 75 Fed. Reg. 48,458-01, 48,467–69 (Aug. 10, 2010). The CFPB thus has the authority to investigate whether Seila Law is violating the Telemarketing Sales Rule, without regard to the general practice-of-law exclusion stated in § 5517(e)(1).

Second, Seila Law contends that the CID violates 12 U.S.C. § 5562(c)(2), which provides that "[e]ach civil investigative demand shall state the nature of the conduct

constituting the alleged violation which is under investigation and the provision of law applicable to such violation." The CID at issue here fully complies with this provision. It identifies the allegedly illegal conduct under investigation as follows: "whether debt relief providers, lead generators, or other unnamed persons are engaging in unlawful acts or practices in the advertising, marketing, or sale of debt relief services or products, including but not limited to debt negotiation, debt elimination, debt settlement, and credit counseling." The CID also identifies the provision of law applicable to the alleged violation as "Sections 1031 and 1036 of the Consumer Financial Protection Act of 2010, 12 U.S.C. §§ 5531, 5536; 12 U.S.C. § 5481 et seq., the Telemarketing Sales Rule, 16 C.F.R. § 310.1 et seq., or any other Federal consumer financial law." That information suffices to put Seila Law on notice of the nature of the conduct the CFPB is investigating, and it is not so general as to raise vagueness or overbreadth concerns. *See United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950).

**AFFIRMED.**