**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CONSUMER FINANCIAL
PROTECTION BUREAU,
    *Petitioner-Appellee*,

v.

SEILA LAW LLC,
    *Respondent-Appellant.*

No. 17-56324

D.C. No.
8:17-cv-01081-JLS-JEM

ORDER AND
AMENDED OPINION

On Remand From the United States Supreme Court

Argued and Submitted November 19, 2020
San Francisco, California

Filed December 29, 2020
Amended May 14, 2021

Before: Susan P. Graber and Paul J. Watford, Circuit
Judges, and Jack Zouhary,[*] District Judge.

Order;
Dissent from Order by Judge Bumatay;
Opinion by Judge Watford

---

    [*] The Honorable Jack Zouhary, United States District Judge for the
Northern District of Ohio, sitting by designation.

## SUMMARY[**]

### Consumer Financial Protection Bureau

The panel filed an order (1) amending its December 29, 2020, opinion issued on remand from the United States Supreme Court; and (2) denying on behalf of the court a sua sponte request for rehearing en banc, in a case in which the panel reaffirmed the district court's order granting the petition of the Consumer Financial Protection Bureau to enforce Seila Law LLC's compliance with the Bureau's civil investigative demand requiring the firm to produce documents and answer interrogatories. The amendments reflected that two of the panel's citations were to the plurality portion of the Supreme Court opinion.

The Supreme Court held that the statute establishing the Consumer Financial Protection Bureau (CFPB) violated the Constitution's separation of powers by placing leadership of the agency in the hands of a single Director who could be removed only for cause. *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2197 (2020). The Court concluded, however, that the for-cause removal provision could be severed from the rest of the statute and thus did not require invalidation of the agency itself. The Supreme Court vacated the panel's prior judgment, published at *CFPB v. Seila Law LLC*, 923 F.3d 680 (9th Cir. 2019), and remanded so that the panel could consider in the first instance whether the civil investigative demand (CID) was validly ratified by former Acting Director Mick Mulvaney during his year-long stint in that office.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

In the amended opinion, the panel held that the CID was validly ratified, but that there was no need to decide whether the ratification occurred through the actions of Acting Director Mulvaney. On July 9, 2020, after the Supreme Court's ruling, the CFPB's current Director, Kathleen Kraninger, expressly ratified the agency's earlier decisions "to issue the civil investigative demand to Seila Law, to deny Seila Law's request to modify or set aside the CID, and to file a petition requesting that the district court enforce the CID." At the time that she ratified these decisions, Director Kraninger knew that the President could remove her with or without cause. She nonetheless ratified the agency's issuance of the CID and ongoing efforts to enforce it.

Director Kraninger's ratification remedied any constitutional injury that Seila Law may have suffered due to the manner in which the CFPB was originally structured. Seila Law's only cognizable injury arose from the fact that the agency issued the CID and pursued its enforcement while headed by a Director who was improperly insulated from the President's removal authority. Any concerns that Seila Law might have had about being subjected to investigation without adequate presidential oversight and control had now been resolved. A Director well aware that she may be removed by the President at will had ratified her predecessors' earlier decisions to issue and enforce the CID.

The panel rejected Seila Law's contention that Director Kraninger could not validly ratify the CFPB's earlier actions because the agency lacked the authority to take those actions back in 2017. The panel held that Seila Law's argument was largely foreclosed by this court's decision in *CFPB v. Gordon*, 819 F.3d 1179 (9th Cir. 2016). Just as in *Gordon*, the constitutional infirmity related to the Director alone, not to the legality of the agency itself.

The panel also rejected Seila Law's remaining argument that Director Kraninger's July 2020 ratification was invalid because it took place outside the limitations period for bringing an enforcement action against Seila Law. The panel held that Seila Law's argument failed because this statutory limitations period pertained solely to the bringing of an enforcement action, which the CFPB had not yet commenced against Seila Law. The only actions ratified by Director Kraninger were the issuance and enforcement of the CID. The very purpose of such a demand was to assist the agency in determining *whether* Seila Law had engaged in violations that could justify bringing an enforcement action; it was impossible to know at this point whether such an action would (or would not) be timely. Seila Law therefore had raised its statute-of-limitations argument prematurely.

Judge Bumatay, joined by Judges Callahan, Ikuta, and VanDyke, dissented from the denial of rehearing en banc. He wrote that the court's decision to deny rehearing en banc effectively meant that Seila Law was entitled to no relief from the harms inflicted by an unaccountable and unchecked federal agency. With no agency empowered to enforce the laws at the time of the CPFB's prior actions, no ratification was permissible.

## COUNSEL

Anthony R. Bisconti (argued) and Thomas H. Bienert Jr., Bienert Katzman PC, Los Angeles, California; Kannon K. Shanmugam, Paul Weiss Rifkind Wharton & Garrison LLP, Washington, D.C.; for Respondent-Appellant.

Kevin E. Friedl (argued), Senior Counsel; Christopher J. Deal, Attorney; Steven Y. Bressler, Assistant General

Counsel; John R. Coleman, Deputy General Counsel; Mary McLeod, General Counsel; Consumer Financial Protection Bureau, Washington, D.C.; for Petitioner-Appellee.

## ORDER

The opinion filed on December 29, 2020, is amended as follows:

On page 5 of the slip opinion, add <(plurality opinion)> after <*Id.* at 2208, 2211>.

On page 7 of the slip opinion, replace <the Court explained> with <the plurality opinion explained>.

The amended version is filed concurrently with this order.

A judge of the court sua sponte requested a vote on whether to rehear this case en banc. A vote was taken, and the matter failed to receive a majority of the votes of the non-recused active judges in favor of en banc consideration. *See* Fed. R. App. P. 35(f). Rehearing en banc is **DENIED**.

An opinion dissenting from the denial of rehearing en banc prepared by Judge Bumatay is filed concurrently with this order.

BUMATAY, Circuit Judge, joined by CALLAHAN, IKUTA, and VANDYKE, Circuit Judges, dissenting from the denial of rehearing en banc:

We all know the story of David and Goliath. Goliath, the fearsome warrior who stood over nine feet tall, awaited a challenger for forty days and forty nights. When no one stepped forward, David—a young shepherd boy with no experience at war—petitioned the king for the opportunity to face Goliath. David stepped on the battlefield with just a sling and a few stones from a nearby brook. Goliath was indignant that such an unworthy opponent would stand against him. But after a brief exchange of words, David slung a single rock at Goliath, knocking him to the ground and killing him. David, the underdog, had won a shocking victory for his people.

This case is a little like the story of David and Goliath; except here, the Ninth Circuit resurrects Goliath on the battlefield so that he can defeat David. Seila Law, a law firm operated by a solo practitioner, challenged the constitutionality of the Consumer Financial Protection Bureau, an independent agency created in the wake of the 2008 financial crisis. The CFPB had issued a civil investigative demand on Seila Law, but the firm argued that the CFPB was unconstitutionally structured since the President could not remove its Director without cause. The CFPB took Seila Law to district court, filing a petition to enforce the civil investigative demand, which the court granted. *CFPB v. Seila Law, LLC*, No. 17-cv-1081, 2017 WL 6536586, at *1 (C.D. Cal. Aug. 25, 2017). Seila Law appealed to our court, and the CFPB prevailed again. *CFPB v. Seila Law LLC*, 923 F.3d 680 (9th Cir. 2019).

But last year, the Supreme Court vindicated Seila Law and held that the CFPB's structure violated the Constitution.

*Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2192 (2020).  The Court did so because Congress improperly shielded the CFPB Director from at-will removal by the President, which rendered the agency "accountable to no one."  *Id*. at 2203.  Thus, like David, the one-man firm seemingly defeated the giant CFPB.

But that is not the end of the story.  Rather than dismiss this action, the Court severed the CFPB Director's tenure protection and remanded the case to our court to determine whether the action must be dismissed.  *Id.* at 2211 (plurality opinion).  Shortly afterward, the CFPB's then-Director, Kathleen Kraninger, ratified both the civil investigative demand and the petition to enforce the demand against Seila Law.  *See CFPB v. Seila Law LLC*, 984 F.3d 715, 717–18 (9th Cir. 2020) (*Seila Law II*).

On remand, a panel of our court resuscitated the giant, holding that the CFPB's post-severance ratification cured any defect in the agency's prior actions.  *Id.* at 719.  In so ruling, the panel held that the CFPB's constitutional defect was confined "to the Director alone," leaving "the legality of the agency itself" undisturbed.  *Id.*  That meant that the Director could retroactively ratify decisions made while the agency was answerable to neither the President nor the people, therefore permitting the investigation of Seila Law to continue.

Our court's decision to deny rehearing en banc effectively means that Seila Law is entitled to no relief from the harms inflicted by an unaccountable and unchecked federal agency.  Thus, while David slayed the giant, Goliath still wins.  But that is not the law.  As the panel recognized, Supreme Court precedent conditions effective ratification on the principal having the power to do the act ratified *at the time of the act*—not just at the time of ratification.  *Id.* at 718.

And as the Court held, the Director's insulation from presidential control rendered the whole agency unconstitutional. With no agency empowered to enforce the laws at the time of the CPFB's prior actions, no ratification is permissible.

I therefore respectfully dissent from the denial of the petition for rehearing en banc.

## I.

### A.

The Constitution vests the Executive power—"*all of it*"—in the President. *Seila Law*, 140 S. Ct. at 2191(emphasis added); U.S. Const. art. II, § 1, cl. 1. It is the President alone who must "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. Unlike the bicameral Legislature with its intentional division of authority, the Constitution purposefully consolidates the Executive power in one person. That's because the Founders determined that the execution of the laws and protection of the nation required the "[d]ecision, activity, secrecy, and d[i]spatch" that "characterise the proceedings of one man." The Federalist No. 70, at 472 (Alexander Hamilton) (J. Cooke ed., 1961). This unity of Executive power permits the laws to be administered without the "habitual feebleness and dilatoriness" that comes with a "diversity of views and opinions." *Id.* at 476.

Concentrating the Executive power in one person also enhances accountability. Rather than permit the "diffusion of accountability" that comes with the "diffusion of power," *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 497 (2010), the Constitution entrusted the Executive power to a "single object" to be held responsible by the

people, The Federalist No. 70, at 479. The Founders then "made the President the most democratic and politically accountable official in Government"—the only office, along with the Vice President, elected by the entire Nation. *Seila Law*, 140 S. Ct. at 2203. So the constitutional design of a single-person Executive "ensure[s] both vigor and accountability" to the people. *Printz v. United States*, 521 U.S. 898, 922 (1997).

At the time of the Founding, and even more so today, the President needed assistance in carrying out these unique responsibilities. The President may therefore "select those who [are] to act for him under his direction in the execution of the laws." *Myers v. United States*, 47 S. Ct. 21, 25 (1926). Legions of federal officials accordingly assist in the discharge of Executive duties. But delegation of authority is not abdication of accountability. In all matters of Executive action, "[t]he buck stops with the President." *Free Enterprise Fund*, 561 U.S. at 493. Thus, while individual executive officials may wield "significant authority," such authority always remains under "the ongoing supervision and control of the elected President." *Seila Law*, 140 S. Ct. at 2203. The President's control over executive officials preserves a chain of accountability, with the President serving as the check on those federal officials and the people a check on the President. *Id.*; *see Free Enterprise Fund*, 561 U.S. at 498 ("[E]xecutive power without the Executive's oversight . . . subverts the President's ability to ensure that the laws are faithfully executed—as well as the public's ability to pass judgment on his efforts.").

Necessarily concomitant with the President's oversight of the Executive branch is the power to remove federal officers. *Myers*, 47 S. Ct. at 24 (holding that such power is "vested in the President alone"). Although the President

possesses various means to influence his subordinates' actions, *see Free Enterprise Fund*, 561 U.S. at 499–500 (discussing budget requests, "purely political factors," and other tools), the Constitution's design for accountability "did not rest . . . on . . . bureaucratic minutiae," *id.* at 500. Rather, it is the ultimate consequence of being fired from one's perch atop an agency that officers "must fear and . . . obey." *Seila Law*, 140 S. Ct. at 2197 (quoting *Bowsher v. Synar*, 478 U.S. 714, 726 (1986)). And one who is not bound to the President's will in this way "may not be entrusted with executive powers." *Bowsher*, 478 U.S. at 732.

## B.

It was this "carefully calibrated" and historically venerated design that Congress contravened in creating the CFPB. *Seila Law*, 140 S. Ct. at 2203. As part of the Dodd-Frank Act of 2010, Congress established the CFPB as an independent agency to implement and enforce 19 consumer protection statutes. *Id.* at 2193. True to that independence, Congress conceived that the agency would be helmed by a solo Director, serving for a five-year term, who would be removable by the President only for "inefficiency, neglect of duty, or malfeasance in office." 12 U.S.C. § 5491(c)(1), (3). This tenure protection meant the CFPB Director was effectively unanswerable to the President. *See, e.g.*, *Seila Law*, 140 S. Ct. at 2204 (raising the concern that some Presidents may have no "influence [over CFPB's] activities" and be "saddled with a holdover Director from a competing political party who is dead set against [the President's] agenda" (emphasis omitted)).

The CFPB's authority is also no little matter. Congress granted the agency "vast rulemaking, enforcement, and adjudicatory authority," including the authority to conduct investigations, issue subpoenas, carry out in-house

adjudications, and prosecute civil actions in federal court. *Id.* at 2191; *see* 12 U.S.C. §§ 5562, 5564(a), (f). Remedies at the CFPB's disposal are similarly broad. They include "any appropriate legal or equitable relief," reformation of contracts, and civil penalties up to one million dollars per day. 12 U.S.C. § 5565(a)(1)–(2), (c). And the agency exercises these powers free from Congress's appropriations decisions. The CFPB is statutorily entitled to a stream of revenue directly from the Federal Reserve. *Seila Law*, 140 S. Ct. at 2194. The CFPB thus "acts as a mini legislature, prosecutor, and court, responsible for creating substantive rules for a wide swath of industries, prosecuting violations, and levying knee-buckling penalties against private citizens." *Id*. at 2202 n.8.

From its inception, the CFPB wielded enormous power but was led by a Director who was "neither elected by the people nor meaningfully controlled . . . by someone who is." *Id.* at 2203. In no uncertain terms, the Supreme Court described this arrangement as having "no basis in history and no place in our constitutional structure." *Id*. at 2201. The CFPB Director's "insulation from removal by an accountable President" offended the separation of powers and was thus "enough to render the agency's structure unconstitutional." *Id*. at 2204.

Moreover, the President's ability to oversee the CFPB Director was so fundamental, and the defect so severe, that if the removal protection were not severable, it may mean that "the entire agency is unconstitutional and powerless to act." *Id*. at 2208 (plurality opinion). There would then be "no agency left with statutory authority to maintain this suit or otherwise enforce the demand." *Id*. Thus, the severance issue presented a binary choice: either (1) the Director's tenure protection could be removed and the CFBP "may

continue to *exist* and operate," *id.* at 2207 (emphasis added), or (2) there would be "*no agency at all*," *id*. at 2210. But because the Court determined "Congress would have preferred a dependent CFPB to *no agency at all*," *id.*, the Court severed the Director's tenure protection.[1]

## C.

With these background principles in mind, I turn to the CFPB's ratification of its past actions against Seila Law. After determining the CFPB's structure was unconstitutional and severing the offending tenure provision, the Supreme Court remanded to this court to determine whether Acting Director Mick Mulvaney had effectively ratified the agency's actions.[2] Before we decided that issue, however, Director Kraninger (now removable by the President without cause) again ratified the CFPB's demand and petition. *Seila Law II*, 984 F.3d at 718. Our court then held that Director Kraninger's actions validly ratified the CFPB's pursuit of Seila Law. *Id.* I disagree with this conclusion.[3]

---

[1] Three Justices joined this severance analysis, while four other Justices joined its judgment. Two other Justices would have denied severance and granted Seila Law relief then and there. *Seila Law*, 140 S. Ct. at 2224 (Thomas, J., concurring in part and dissenting in part).

[2] The Court declined to opine on the ratification debate, which "turn[ed] on case-specific factual and legal questions not addressed below and not briefed" before the Court. *Seila Law*, 140 S. Ct. at 2208 (plurality opinion). Instead, it left the issue for lower courts to consider in the first instance. *Id.*

[3] As a threshold matter, I have concerns about whether the CFPB has Article III standing to bring this action. As we held in *CFPB v. Gordon*, a party must be "part of the Executive Branch" to be exempt from the traditional standing requirement of an individualized injury.

To begin, ratification does not seem to be a proper remedy for separation-of-powers violations such as we face here. The Court has made clear that parties injured by actions of a constitutionally deficient executive official are "entitled to relief." *Lucia v. SEC*, 138 S. Ct. 2044, 2055 (2018). Indeed, when a party raises a constitutional challenge as a defense to a federal enforcement action, "no theory . . . would permit [a court] to declare the [agency's] structure unconstitutional without providing relief to the [injured party.]" *Fed. Election Comm'n v. NRA Pol. Victory Fund*, 6 F.3d 821, 828 (D.C. Cir. 1993). In the criminal context, for example, the Court usually regards structural violations as "so intrinsically harmful as to require automatic reversal" of the defective decision. *Neder v. United States*, 527 U.S. 1, 7 (1999). Since ratification purports to cure defects in an agency's prior actions, the result is that a party injured by a separation-of-powers violation is left with no relief at all. But the Court has told us to provide remedies that "create incentives to raise" separation-of-powers challenges. *See Lucia*, 138 S. Ct. at 2055 n.5 (simplified) (ordering a new hearing before a properly appointed SEC administrative law judge, even though the SEC had ratified the appointment of the then-unconstitutionally serving ALJ who had ruled against Lucia). Ratification then seems inconsistent with the Court's teachings.

Even if ratification could cure structural constitutional errors, the CFPB's ratification here was ineffective because

---

819 F.3d 1179, 1189 (9th Cir. 2016). *Seila Law* raises the concern that the CFPB was not duly constituted as "part of the Executive Branch" for Article III standing purposes. Nevertheless, since no party raised or briefed this issue, I do not discuss it here. On en banc review, we should have directed the parties to address this court's jurisdiction to hear this case.

it lacked Executive authority at the time it initiated its actions against Seila Law.  The ratification inquiry is "governed by principles of agency law." *Fed. Election Comm'n v. NRA Pol. Victory Fund*, 513 U.S. 88, 98 (1994) (discussing Restatement (Second) of Agency § 90 (1958)); *see Seila Law II*, 984 F.3d at 718; *Gordon*, 819 F.3d at 1191.  And under those common law principles, it is essential that the party ratifying should be able "to do the act ratified at the time the act was done" as well as "at the time the ratification was made." *NRA Political Victory Fund*, 513 U.S. at 98 (emphasis omitted).

This is so because ratification "affects the relations between the principal, agent, and third persons" and thus "the same limitations apply to the ratification of acts" that apply to the acts themselves.  Restatement (Second) of Agency § 84 cmt. a (1958).  Since "[t]o ratify is to give validity to the act of another, [it] implies that the person or body ratifying has at the time power to do the act ratified," *Norton v. Shelby Cnty.*, 118 U.S. 425, 451 (1886), and "a ratification can have no greater effect than a previous authority," *Dist. Twp. of Doon v. Cummins*, 142 U.S. 366, 376 (1892).

We applied these principles in *Gordon*.  In that case, the CFPB brought an action against Gordon during Richard Cordray's tenure as Director after an unconstitutional recess appointment.  *Gordon*, 819 F.3d at 1186.  Later, however, Cordray was properly nominated and confirmed, and he ratified his earlier action against Gordon.  *Id.* at 1185–86.  Gordon argued that, even after Senate confirmation, Director Cordray could not have ratified his own prior acts as a recess appointee because he lacked the power to do those acts at that time.

Applying the Second Restatement, we held that "if the principal (here, CFPB) had authority to bring the action in question, then the subsequent . . . ratification of the decision to bring the case against Gordon is sufficient." *Id.* at 1191 (citing Restatement (Second) of Agency § 84(1)).  Thus, we construed the "principal" to be the CFPB *as an agency*, which could possess the power to act on behalf of the Executive branch separately from any individual Director.[4] Next, because we understood that "the CFPB had the authority to bring the action at the time Gordon was charged," we ruled that a properly appointed Director was empowered to ratify the action after the fact. *Id.* at 1192.  In the end, we held that Director Cordray—acting as the CFPB's agent after being properly nominated and confirmed—could ratify his own prior acts as a recess appointee. *Id.*

But based on the Court's intervening decision in *Seila Law*, that ratification inquiry must now come out differently. Contrary to our assumption in *Gordon*, the CFPB was not a "principal" empowered to act on behalf of the Executive branch at the time of its actions against Seila Law.  Until the Supreme Court severed the Director's tenure protection, the CFPB was operating beyond the control of the President. When an agency has "slip[ped] from the Executive's control, and thus from that of the people," *Free Enterprise Fund*, 561 U.S. at 499, the chain of accountability breaks.  And when that happens, the chain of delegated power also breaks.

---

[4] Judge Ikuta forcefully argued that this analytical move was incorrect because only individual officials—and not abstract agencies— can possess Executive power. *See Gordon*, 819 F.3d at 1200 (Ikuta, J., dissenting).  Whether the *Gordon* majority or Judge Ikuta is correct on this point is beyond the scope of this dissent.  Under either view, ratification was improper here.

*See Bowsher*, 478 U.S. at 732 (holding that officers not controlled by the President are not "entrusted with executive powers"). That is because the Executive power is not Congress's to dispense to such individuals and agencies as it pleases; it is vested solely in the President, who may be assisted by those he controls—including through the "powerful tool" of removal. *Free Enterprise Fund*, 561 U.S. at 510 (simplified).

Indeed, the Court's determination that severance was necessary confirms that the CFPB lacked Executive authority pre-severance. The Court was explicit that, if it failed to sever the Director's tenure protection, there would be "no agency . . . with statutory authority to maintain this suit." *Seila Law*, 140 S. Ct. at 2208 (plurality opinion). And contrary to the panel's belief that the constitutional violation did not affect "the legality of the agency itself," *Seila Law II*, 984 F.3d at 719, the Supreme Court held that the Director's separation-of-powers violation was "enough to render the agency's structure unconstitutional." *Seila Law*, 140 S. Ct. at 2204 (majority opinion). Given this defect, there would be "*no agency at all*" in the absence of severance, and the Court severed because it believed Congress would have preferred a "dependent CFPB" to "no CFPB." *Id.* at 2210 (plurality opinion). Thus, so long as the CFPB was not accountable to the President and, through him, to the people, the agency did not "ha[ve] the authority to bring the action" on behalf of the Executive branch. *Gordon*, 819 F.3d at 1192. In other words, the agency was not a "principal" under agency law and could not have ratified Executive-branch actions after the fact.[5] By holding the ratification to be

---

[5] A "principal" is "[s]omeone who authorizes another to act on his or her behalf as an agent." Black's Law Dictionary (11th ed. 2019). Since the CFPB lacked the authority to "act" as a principal on behalf of

effective, we allowed the CFPB to retroactively curtail Seila Law's rights, even though it lacked the power to do so at the time.

Consider the converse: if, as the panel maintained, the pre-severance CFPB *did* possess lawful authority to act against Seila Law, the Court's decision to sever the Director's removal protection would be inexplicable and irrelevant. If "the legality of the agency" were untouched by the Director's defect, *Seila Law II*, 984 F.3d at 719, Seila Law would have suffered no constitutional injury and would have been entitled to no relief. That cannot be the case. As the Court stated, "violat[ing] the separation of powers . . . inflicts a here-and-now injury on affected third parties that can be remedied by a court." *Seila Law*, 140 S. Ct. at 2196 (simplified). Thus, the Court recognized that the unconstitutional structure of the CFPB injured Seila Law. But our court today pronounces that this harm is no big deal and allows the CFPB to continue its pursuit of Seila Law— effectively rendering the firm's "here-and-now injury" without remedy.

## II.

Under our constitutional structure, an agency untethered from the President's control may not wield his power. Such unchecked power would be unaccountable to the people and subvert the constitutional design. Before severance, the CFPB Director was free from Presidential oversight—and thus free of Executive authority. The doctrine of ratification does not permit the CFPB to retroactively gift itself power that it lacked. The panel's decision to condone this power

---

the Executive branch, it could not bestow that authorization on others, including its Director.

grab was erroneous. Just as bad, our failure to correct this decision en banc declares Goliath the victor and makes hollow the promise of judicial relief for separation-of-powers violations. I respectfully dissent.

---

## OPINION

WATFORD, Circuit Judge:

In February 2017, the Consumer Financial Protection Bureau (CFPB) issued a civil investigative demand (CID) to Seila Law LLC, requiring the firm to produce documents and answer interrogatories. Seila Law refused to comply. In June 2017, the CFPB filed a petition to enforce the CID. The district court granted the petition and we affirmed. *CFPB v. Seila Law LLC*, 923 F.3d 680 (9th Cir. 2019). Upon review of our court's decision, the Supreme Court held that the statute establishing the CFPB violated the Constitution's separation of powers by placing leadership of the agency in the hands of a single Director who could be removed only for cause. *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2197 (2020). The Court concluded, however, that the for-cause removal provision could be severed from the rest of the statute and thus did not require invalidation of the agency itself, as Seila Law had urged. *Id.* at 2209–11 (plurality opinion); *id.* at 2245 (Kagan, J., concurring in judgment with respect to severability and dissenting in part). The Court vacated our judgment and remanded so that we could consider in the first instance "whether the civil investigative demand was validly ratified" by former Acting Director Mick Mulvaney during his year-long stint in that office. *Id.* at 2208, 2211 (plurality opinion).

We conclude that the CID was validly ratified, but we need not decide whether that occurred through the actions of Acting Director Mulvaney. On July 9, 2020, after the Supreme Court's ruling, the CFPB's current Director, Kathleen Kraninger, expressly ratified the agency's earlier decisions "to issue the civil investigative demand to Seila Law, to deny Seila Law's request to modify or set aside the CID, and to file a petition requesting that the district court enforce the CID." At the time that she ratified these decisions, Director Kraninger knew that the President could remove her with or without cause. She nonetheless ratified the agency's issuance of the CID and ongoing efforts to enforce it.

Director Kraninger's ratification remedies any constitutional injury that Seila Law may have suffered due to the manner in which the CFPB was originally structured. Seila Law's only cognizable injury arose from the fact that the agency issued the CID and pursued its enforcement while headed by a Director who was improperly insulated from the President's removal authority. Any concerns that Seila Law might have had about being subjected to investigation without adequate presidential oversight and control have now been resolved. A Director well aware that she may be removed by the President at will has ratified her predecessors' earlier decisions to issue and enforce the CID.

Seila Law advances two arguments challenging the validity of Director Kraninger's ratification, neither of which we find persuasive.

As a threshold matter, Seila Law contends that Director Kraninger could not validly ratify the CFPB's earlier actions because the agency lacked the authority to take those actions back in 2017. Seila Law bases this argument on the statement in *Federal Election Commission v. NRA Political*

*Victory Fund*, 513 U.S. 88 (1994), that "it is essential that the party ratifying should be able not merely to do the act ratified at the time the act was done, but also at the time the ratification was made." *Id.* at 98 (emphasis omitted). In Seila Law's view, until the Supreme Court invalidated the for-cause removal provision, the CFPB was exercising executive power unlawfully, which in turn rendered all of the agency's prior actions void at the time they were taken and hence incapable of being ratified.

Seila Law's argument is largely foreclosed by our court's decision in *CFPB v. Gordon*, 819 F.3d 1179 (9th Cir. 2016). In that case, the CFPB initiated an enforcement action after Richard Cordray had been appointed as the agency's Director pursuant to President Obama's recess appointment power. *Id.* at 1185–86. Shortly thereafter, the Supreme Court's decision in *NLRB v. Noel Canning*, 573 U.S. 513 (2014), called into question the validity of Director Cordray's appointment. After he was renominated and confirmed by the Senate, Director Cordray issued a blanket ratification of all actions he had taken while serving as a recess appointee. *Gordon*, 819 F.3d at 1185–86. We held that Director Cordray's ratification cured any Appointments Clause defect in the initiation of the enforcement action against the defendant. *Id.* at 1192. Addressing the same passage from *NRA Political Victory Fund* quoted above, we reasoned that the constitutional defect was limited to Director Cordray and did not infect the agency as a whole. Thus, the CFPB *as an agency* had the authority to bring the enforcement action both at "the time the act was done" and at "the time the ratification was made." *Id.* at 1191–92.

The same is true here. Just as in *Gordon*, the constitutional infirmity relates to the Director alone, not to the legality of the agency itself. Although the Supreme

Court held in *Seila Law* that the CFPB's "structure" violated the separation of powers, 140 S. Ct. at 2192, the plurality opinion explained that "[t]he only constitutional defect we have identified in the CFPB's structure is the Director's insulation from removal." *Id.* at 2209. Nothing in the Court's decision suggests that it believed this defect rendered all of the agency's prior actions void. Indeed, had that been the Court's view, it presumably would have ordered the dismissal of this proceeding rather than remanding for us to consider whether the agency's actions relating to the CID had been validly ratified.

We find strong support for our holding in *Federal Election Commission v. Legi-Tech, Inc.*, 75 F.3d 704 (D.C. Cir. 1996), a case cited with approval in *Gordon*. 819 F.3d at 1191. In *Legi-Tech*, the Federal Election Commission brought a civil enforcement action while two congressional officers were impermissibly serving as *ex officio* members of the Commission. 75 F.3d at 706. After the presence of those members was held to violate the separation of powers, the Commission reconstituted itself and ratified its earlier decision to bring the enforcement action. *Id.* at 706, 708. The D.C. Circuit held that the ratification was valid and, in doing so, rejected the same argument Seila Law advances here—namely, that a "structural" constitutional defect in an agency's composition renders all of the agency's prior actions void. *Id.* at 708–09. Taken together, *Legi-Tech* and *Gordon* confirm that ratification is available to cure both Appointments Clause defects and structural, separation-of-powers defects.

Seila Law's remaining argument is that Director Kraninger's July 2020 ratification is invalid because it took place outside the limitations period for bringing an enforcement action against Seila Law. In support of its

position, Seila Law again relies on the Supreme Court's decision in *NRA Political Victory Fund*—in particular, its holding that the Solicitor General could not validly ratify the filing of an unauthorized petition for certiorari when the attempted ratification occurred after the time for filing the petition had already run.  513 U.S. at 98.

The statute of limitations relevant here states that, "[e]xcept as otherwise permitted by law or equity, no action may be brought under this title more than 3 years after the date of discovery of the violation to which an action relates." 12 U.S.C. § 5564(g)(1).  According to Seila Law, the "date of discovery of the violation" was February 18, 2016, when the CFPB filed an application (in a proceeding brought against a different entity) that accused Seila Law of wrongdoing.  Alternatively, Seila Law contends that the limitations period began to run at the very latest on February 27, 2017, when the CFPB issued the CID at issue.

Seila Law's argument fails because this statutory limitations period pertains solely to the bringing of an enforcement action, which the CFPB has not yet commenced against Seila Law.  The only actions ratified by Director Kraninger are the issuance and enforcement of the CID.  The very purpose of such a demand is to assist the agency in determining *whether* Seila Law has engaged in violations that could justify bringing an enforcement action; it is impossible to know at this point whether such an action would (or would not) be timely.

Whether Seila Law would be able to mount a successful statute-of-limitations defense in a future enforcement action has no bearing on the validity of Director Kraninger's ratification.  "[A] party may not defeat agency authority to investigate with a claim that could be a defense if the agency subsequently decides to bring an action against it."  *EEOC*

*v. Children's Hospital Medical Center*, 719 F.2d 1426, 1429 (9th Cir. 1983) (en banc). We have applied that principle specifically in the statute-of-limitations context. In *Pacific Maritime Association v. Quinn*, 491 F.2d 1294 (9th Cir. 1974), the employer resisted a demand for documents from the Equal Employment Opportunity Commission on the ground that the employee's underlying discrimination complaint was untimely. *Id.* at 1295. We stated that the "statute of limitations issue has been raised prematurely" and held that the demand should be enforced so that the agency could investigate whether there was a continuing violation that would render the complaint timely. *Id.* at 1296. Seila Law has similarly raised its statute-of-limitations argument prematurely.

For the reasons given in our earlier decision, we reject Seila Law's arguments challenging the CFPB's statutory authority to issue the CID. 923 F.3d at 684–85. Accordingly, we reaffirm the district court's order granting the CFPB's petition to enforce the CID.

**AFFIRMED.**